1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**DISTRICT OF NEVADA**

7
8

JUDITH ANN ANDERSON, Administrator of the   )
Estate of JEAN C. BRIDGE,                                       )

9

                           Plaintiff,                     )

Case No. 2:10-cv-02235-GMN-GWF

10

                                          )

11

vs.                                                                              )

**ORDER**

12

WAL-MART STORES, INC., *et al.*,                     )

13

                        Defendants.              )

**Motion Regarding Spoliation of
Evidence - #31**

14

       This matter is before the Court on Plaintiff's Motion Regarding Spoliation of Evidence

15

(#31), filed on August 18, 2011; Plaintiff's Supplement to Motion Regarding Spoliation of

16

Evidence (#33), filed on September 2, 2011; Defendant's Opposition to Motion Regarding

17

Spoliation of Evidence (#34), filed on September 6, 2011; and Plaintiff's Reply to Opposition to

18

Motion Regarding Spoliation of Evidence (#38), filed on September 14, 2011.  The Court

19

conducted a hearing in this matter on September 28, 2011.

20

                               **BACKGROUND**

21

       On December 5, 2008, Plaintiff's decedent, Jean C. Bridge, who was 84 years old, was

22

shopping in the Wal-Mart Department Store located at 5200 S. Fort Apache Road in Las Vegas,

23

Nevada.  Ms. Bridge was pushing a shopping cart in the vicinity of the pharmacy department at the

24

front of the store when her right shin made contact with a metal step stool that had apparently been

25

placed against a wall adjacent to where Ms. Bridge was walking.  Ms. Bridge suffered a fairly

26

serious laceration to her right leg.  Ms. Bridge died in August 2010, prior to the filing of this

27

lawsuit, and her sworn testimony was never obtained.  There were no other eyewitnesses to the

28

accident and the particular area in which the accident occurred was reportedly not viewable on the

1   video camera located in the pharmacy area.[1]  It is therefore unclear whether Ms. Bridge's shopping

2   cart hit the step stool before it fell and struck her leg, whether Ms. Bridge's leg directly collided

3   with the step stool as it stood against the wall, or whether the step stool fell over and struck her leg

4   as she passed by.

5          Following the accident, a Wal-Mart employee, Julie Dillman, filled out a "Customer

6   Statement" form which allegedly contained Ms. Bridge's version of the accident.  Ms. Bridge

7   allegedly stated that she "was walking by front of pharmacy hit right leg (shin) on step stool leaned

8   against wall." *Defendant's Opposition (#34), Exhibit G.*  The "Customer Statement" form was not

9   signed by Ms. Bridge and there is no evidence that she actually reviewed or adopted it as her own

10  statement at any time.  As such, the document does not constitute the recorded recollection of Ms.

11  Bridge.  *See* Fed.R.Evid. 803(5).  It is, instead, a statement by Ms. Dillman as to what Ms. Bridge

12  allegedly said.

13         Sherwin Trinidad, a store customer, provided first aid to Ms. Bridge following the accident.

14  Mr. Trinidad provided a written statement to Wal-Mart, and later testified at deposition, that he

15  heard Ms. Bridge tell the ambulance paramedic that while moving her cart she hit the step stool

16  which was folded on the wall.  Mr. Trinidad also testified that Ms. Bridge appeared confused

17  following the accident.  He also testified that he observed blood on the top handle of the step stool

18  and inferred that this part of the step stool struck Ms. Bridge's leg.

19         The Wal-Mart store's support manager/safety team leader, Leah Siemen, was responsible

20  for collecting evidence and information concerning accidents, including obtaining written witness

21  statements, photographs and preserving physical evidence and surveillance video of the incident, if

22  available.  Following Ms. Bridge's accident, Ms. Siemen took custody of the step stool.  Before

23  removing the step stool from the pharmacy area, it was placed upright against a door or door jam

24  and photographed.  *See Defendant's Opposition (#34), Exhibit B.*  The two photographs submitted

25  to the Court depict a white tubular metal step stool with two black colored steps which may be

26

27         _____

28         [1] Plaintiff disputes whether the accident location was viewable on surveillance cameras.
    This issue is not a subject of the present motion, however.

plastic.  Although the photographs' clarity is not precise, the sticker or label on the top step appears

worn.  The white metal frame also appears to have dirt or smudge marks which also suggests that

the step stool had been used, possibly extensively.  Ms. Siemen testified that she placed the step

stool in the store's administrative office for safekeeping and she also placed a tag on the step stool

which stated that it was "evidence."

Ms. Siemen and other Wal-Mart store employees testified that this model of step stool was

sold as merchandise in the store in December 2008.  They also testified that at least a few of the

step stools had been used by customers or store  employees and were located at various places

throughout the store.  This use of store merchandise was apparently contrary to Wal-Mart policy

which requires that only approved equipment be used by employees.  Wal-Mart also presumably

frowns on customers using store merchandise in this manner.  Following Ms. Bridge's accident, the

store manager, Mr. Delle Foglie,  ordered that the step stools be gathered up and removed from the

public area of the store.  Although it is not clear from the record, Defendant's counsel represented

at the hearing that this instruction included removing the step stools that were still on the

merchandise shelf and which had not been used by customers or store employees.  The step stools

were then placed on a pallet to be returned to the distributor or otherwise disposed of.

A day or two after the accident, Ms. Siemen discovered that the step stool involved in the

accident was missing from the office.  Ms. Siemen testified that she spoke to the overnight assistant

manager, "Mario," who told her that he had put the "ladders" on the pallet.  *Defendant's*

*Opposition (#34), Exhibit I, Siemen Deposition, pp. 64-65.*  Ms. Siemen inspected the step stools on

the pallet to see if one of them had the evidence tag.  She did not see a step stool with an evidence

tag.  It does not appear that she made any other effort to identify or find the accident step stool.

Ms. Siemen testified that a few weeks after the accident she was requested by Wal-Mart's

claims investigator, Sedgwick CMS, to provide a written statement regarding the missing step

stool.  On January 5, 2009, Ms. Siemen filled out a witness statement form which stated: "I pulled

the ladder involved in this accident to the ad office.  We had pulled other ladders from the floor as

well.  The others were destroyed."  Below the signature and date line on the statement, Ms. Siemen

further wrote: "The ladder for this claim was mistakenly thrown away with the others."  *Motion*

1  (#31), Exhibit 4.  Plaintiff argues that this last sentence was added a later time.  Ms. Siemen

2  testified, however, that she believes she wrote the last sentence below the signature and date line

3  because she ran out of room in the space above.  *Defendant's Opposition (#34), Exhibit I, Siemen*

4  *Deposition, p. 66.*

5  Ms. Bridge's lawyer sent a letter to Sedgwick CMS on January 7, 2009 notifying it that she

6  represented Ms. Bridge in regard to the accident.  *Motion (#31), Exhibit 2.*  The letter requested that

7  all evidence regarding the accident including "the folding ladder or step stool that injured Ms.

8  Bridge" be preserved.  Ms. Bridge's lawyer sent a follow-up letter to Sedgwick CMS on February

9  25, 2009 requesting a copy of the incident report and the video of the incident and again notified

10  Sedgwick that evidence should not be destroyed.  *Motion (#31), Exhibit 3.*  Based on the testimony

11  of Wal-Mart's personnel, however, the step stool was lost and apparently discarded approximately

12  one month before counsel's January 7, 2009 letter.  Although the motion states that Plaintiff's

13  counsel first learned during discovery that the step stool had been lost or discarded, she

14  acknowledged at the hearing that she may have been informed, prior to the lawsuit, that the step

15  stool had been lost or was no longer available.

16  **DISCUSSION**

17  Plaintiff argues that Wal-Mart's answer should be stricken and its default entered as a

18  sanction for its failure to preserve the step stool as evidence.  In support of this severe sanction,

19  Plaintiff argues that Defendant's destruction or disposal of the step stool was intentional or

20  reckless.  Defendant argues, however, that it made a reasonable effort to preserve the step stool and

21  that it should not be sanctioned simply because the step stool was lost through an innocent and

22  inadvertent error on the part of its employees.  Defendant also argues that Plaintiff cannot show that

23  her ability to prove her case has been materially prejudiced by the loss of the step stool.

24  The court has the inherent authority to impose sanctions based on a party's failure to

25  preserve relevant evidence.  A party may only be sanctioned if he or she had some notice that the

26  evidence was potentially relevant to pending or reasonably foreseeable litigation.  *United States v.*

27  *$40,955.00 In U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009); *Leon v. IDX Sys. Corp.*, 464 F.3d

28  951, 958 (9th Cir. 2006); and *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.

4

1992).  *See also Durham v. County of Maui*, 2010 WL 3528991, at *4 (D.Hawai'i 2010).

Sanctions may also be imposed under Rule 37 of the Federal Rules of Civil Procedure if a party

destroys relevant evidence in violation of a discovery order.  *Leon v. IDX Sys. Corp.*, 464 F.3d at

958.  In this case, the step stool was lost or disposed of by Defendant shortly after the accident.

Therefore, sanctions can only be imposed in this case pursuant to the Court's inherent authority.

Sanctions may be imposed on a party responsible for spoliation of evidence in three ways:

> First, a court may instruct the jury that it may draw an inference
> adverse to the party or witness responsible for destroying the
> evidence.  See *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th
> Cir.1993); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.1991),
> *cert. denied*, 503 U.S. 962, 112 S.Ct. 1567, 118 L.Ed.2d 212 (1992).
> Second, a court can exclude witness testimony proffered by the party
> responsible for destroying the evidence and based on the destroyed
> evidence.  See *Glover*, 6 F.3d at 1329; *Unigard*, 982 F.2d at 368-69.
> Finally, a court may dismiss the claim of the party responsible for
> destroying the evidence.  *See Allstate Ins. Co. v. Sunbeam Corp.*, 53
> F.3d 804, 806-07 (7th Cir.1995); *see also Chambers*, 501 U.S. at 45,
> 111 S.Ct. 2123 ("outright dismissal ... is a particularly severe
> sanction, yet is within the court's discretion"); *Alexander v. National
> Farmers Org.*, 687 F.2d 1173 (8th Cir.1982), cert. denied, 461 U.S.
> 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983) (dictum) (dismissal of
> claims is a severe sanction and may be warranted for "outrageous"
> destruction of evidence).

*In re Napster*, 462 F.Supp.2d 1060, 1066 (N.D.Cal. 2006).  *See also Powell v. Texvans,*

*Inc.*, 2011 WL 10099120, *4 (D.Nev. 2011) and *Morford v. Wal-Mart Stores, Inc.*, 2011 WL

635220, *3 (D.Nev. 2011).

A party's destruction of evidence need not be in "bad faith" to warrant imposition of

sanctions.  "However, a party's motive or degree of fault in destroying evidence is relevant to what

sanction, if any, is imposed."  *In re Napster,* 464 F.Supp.2d at 1066-67, citing *Baliotis v. McNeil,*

870 F.Supp. 1285, 1291 (M.D.Pa.1994).  Courts should choose "the least onerous sanction

corresponding to the willfulness of the destructive act and the prejudice suffered by the victim."

*Schmid v. Milwaukee Electric Tool Corp.,* 13 F.3d 76, 79 (3rd Cir.1994); *Dillon v. Nissan Motor*

*Co., Ltd.*, 986 F.2d 263 (8th Cir. 1993).  *See also Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th

Cir. 2006).

Wal-Mart's safety team leader Leah Siemen was aware of the potential relevance of the step

stool to future litigation since she took initial steps to preserve it as "evidence."  In any event, Wal-

5

1   Mart should have known that the step stool was potentially relevant as "the mechanism of injury"

2   in Ms. Bridge's accident and should be preserved for inspection by Ms. Bridges or her

3   representatives in the event of a claim.

4        Although Plaintiff argues that Wal-Mart's failure to preserve the accident step stool was

5   intentional or reckless, the record does not support this assertion.  Wal-Mart, however, was not

6   fault-free in regard to the loss of the step stool.  Ms. Siemen placed the accident step stool in the

7   administrative office and attached an "evidence" tag to it.  Apparently that same day, Mr. Delle

8   Foglie, instructed store personnel, including Ms. Siemen, to remove all of the other step stools from

9   the public area of the store.  The employee or employees who were charged with the task of

10  removing the step stools apparently were not informed that the step stool in the administrative

11  office should not be removed.  Even without such an instruction, the employee(s) should have

12  recognized that a step stool marked as "evidence" should not be removed without at least making

13  some further inquiry.  (There is no reason to believe that anyone other than a Wal-Mart employee

14  had access to the office and would have removed the step stool.)  These circumstances support a

15  finding that Wal-Mart's store manager and/or Ms. Siemen were negligent in failing to take

16  adequate measures to ensure that the accident step stool was not disposed of with the other step

17  stools.

18       The record also supports the finding that Ms. Siemen failed to make a reasonably diligent

19  effort to find the accident step stool before it was irretrievably lost.  The only thing that Ms. Siemen

20  did was to look at the step stools on the pallet to see if one of them had the evidence tag.  When she

21  did not see an evidence tag, she did nothing further.  Ms. Siemen was familiar with the accident

22  step stool since she had personally taken possession of it and placed it in the office.  The

23  photograph submitted to Court indicates that there was distinct wear on the accident step stool

24  which reasonably could have permitted Ms. Siemen or anyone else looking for it to identify it even

25  if the evidence tag had been removed.  Mr. Trinidad also testified that there was blood on the step

26  stool which, of course, would have been an even more definitive identifier.  Ms. Siemen or other

27  employees could also have compared the photograph(s) to the step stools on the pallet in an effort

28  to recover the accident step stool before the steps stools were disposed of by Wal-Mart.  It would

1  have taken no great foresight to recognize that such efforts should be pursued.  The failure to do so

2  was negligent.

3       The next question is:  What prejudice, if any, has Plaintiff suffered by virtue of Defendant's

4  failure to preserve the step stool?  Plaintiff has the burden of establishing that Ms. Bridge's injury

5  was caused by an unreasonably dangerous condition on the premises.  An owner or occupant of

6  premises, however, is not liable for injury resulting from a dangerous condition that was obvious

7  and should have been observed by the plaintiff in the exercise of reasonable care.  *Gunlock v. New*

8  *Frontier Hotel*, 78 Nev. 182, 185, 370 P.2d 682, 684 (1962).  Plaintiff must also prove that Wal-

9  Mart created the dangerous condition or that it had had actual or constructive notice of the

10 dangerous condition prior to the accident.  *Tovar v. Ralphs Grocery*, 2009 WL 1067241, *4

11 (D.Nev. 2009), citing *Asmussen v. New Golden Hotel Co.*, 80 Nev. 260, 262, 392 P.2d 49 (1964).

12 *See also English v. Wal-Mart Stores, Inc.*, 2011 WL 3496092, *3 (D.Nev. 2011), citing *Sprague v.*

13 *Lucky Stores, Inc.*, 849 P.2d 320, 322 (Nev. 1993).

14      Wal-Mart does not dispute that the laceration to Ms. Bridge's leg was caused by contact

15 with the step stool.  Wal-Mart disputes, however, that the location of the step stool constituted a

16 dangerous condition or was a condition that Ms. Bridge could not have avoided through the

17 exercise of reasonable care.  Wal-Mart also does not concede that its employee(s) were responsible

18 for the location of the step stool at the time of the accident or that it had notice of the location of the

19 step stool prior to the accident.

20      The only information as to how the accident occurred are the statements that Ms. Bridge

21 allegedly made to Wal-Mart's employee or to the paramedics shortly after the accident.  Those

22 alleged statements indicate that the step stool was propped or leaning against a wall when Ms.

23 Bridge encountered it and that Ms. Bridge either ran into the immobile step stool with her right leg,

24 or that she struck the step stool with her shopping cart and it then fell and struck her leg.

25 Defendant's counsel represented at the hearing that Ms. Bridge was "legally blind," which, if true,

26 may have been a factor in the accident.  The photographs of the step stool provide sufficient

27 evidence as to its dimensions such that the jury can make some judgment as to whether it posed a

28 hazard to store customers depending on where it was positioned at the time of accident.  In this

7

respect, Plaintiff has not been substantially prejudiced by its unavailability for inspection or use as a trial exhibit.

An opportunity to inspect the step stool might have provided some additional information as to how the accident occurred.  Witness Sherwin Trinidad testified that he saw blood on the handle of the step stool and therefore inferred that this part of the stool struck Ms. Bridge's leg.  There are, of course, other possible explanations as to how blood got onto the handle of the step stool.  If Mr. Trinidad's inference is correct, however, then it is more consistent with Ms. Bridge's shopping cart having first struck the step stool, than it is with her leg having collided with the step stool as it leaned against the wall.  Although it is debatable whether either theory is more probative of liability than the other, Plaintiff argues that an inspection of the step stool could have revealed blood or other marks on the step stool to support her theory (whatever it is) as to how the accident occurred.

Plaintiff has also argued that an inspection of the step stool may have disclosed defects in its condition that caused or contributed to the accident.  There is nothing in the little information known about the accident which suggests that a possible defect in the step stool was a cause.  While Plaintiff is entitled to an appropriate remedy for the prejudice reasonably caused by Defendant's failure to preserve the step stool, the Court will not impose a sanction based on a theory of causation which, in turn, is based on nothing more than speculation.

There is evidence in this case that Wal-Mart employees and customers used the step stools inside the store.  The step stool in question was in the pharmacy area which is located on the opposite side of the store from the hardware department where the step stools were stocked as merchandise.  The wear on the step stool depicted in the photographs suggests that it is unlikely that a customer would have taken this step stool across the store for purposes of buying it.  It is also unlikely that a customer would have moved this step stool from the hardware department to the pharmacy area in order to retrieve some item on a shelf.  On the other hand, a customer, as well as an employee, may have moved the step stool from one place in the pharmacy area to another position.  The ability or inability to inspect the step stool has no bearing on the answer to this last question.

Based on the foregoing, Defendant should be precluded from introducing any testimony based on a witness's inspection of the step stool that is contrary to the condition depicted in the photographs.  It would be unfair, for example, to permit Defendant's witnesses to testify on direct examination that the step stool appeared in a new, unused condition which might suggest that a customer, instead of any employee, had placed it in the pharmacy area.  It is also reasonable to instruct the jurors that they may infer from the condition of the step stool depicted in the photographs that it was used in the store by store employees or customers.

## CONCLUSION

The evidence in this case does not support a finding that Defendant intentionally destroyed or disposed of the step stool or allowed it to be discarded in reckless disregard of its evidentiary value.  The severe sanction of striking Defendant's answer and entering its default is, therefore, not justified by virtue of the Defendant's conduct.  The prejudice suffered by Plaintiff as a result of the loss of the step stool is also not so substantial as to warrant the severe sanction of default.  The principle obstacle to proving how the accident occurred is not the loss of the step stool, but the fact that the only known witness to the accident, Ms. Bridge, died before her testimony could be preserved.  The prejudice resulting from Defendant's negligent destruction of the step stool can be rectified by the lesser sanctions of the evidence preclusion and an inference instruction to the jury.  Accordingly,

**IT IS HEREBY ORDERED** that  Plaintiff's Motion Regarding Spoliation of Evidence (#31) is **granted**, in part, and **denied**, in part as follows:

1.    Defendant is precluded from introducing any testimony based on a witness's inspection of the step stool that is contrary to the condition depicted in the photographs;

2.    The jurors should be instructed that they may infer from the condition of the step stool depicted in the photographs that it was used in the store by store employees or customers; and

. . .

. . .

9

3.      Plaintiff's motion to strike Defendant's answer and enter its default as a

sanction for spoliation of evidence is denied.

DATED this 3rd day of October, 2011.


GEORGE FOLEY, JR.
United States Magistrate Judge